is free to take off his or her mask. It doesn't have to. Your choice. Nobody's browbeating you one way or the other. The judges may or may not take off their masks as well because we're distanced. So those are the running rules. You have reserved two minutes for rebuttal,       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. That gives you eight out of the game. So the floor is yours. Daniel Habib, Federal Defenders of New York, on behalf of Frank Smith Castillo. May it please the Court. Frank Smith Castillo is now 64 years old. Counting good time, he has served more than 21 years of a mandatory life sentence imposed following three bank robberies in which no shots were fired and no one was seriously injured. Despite having no prospect of release, he has applied himself to work and rehabilitative programming within the BOP where he has built an exemplary institutional record. The staff at USP Big Sandy, the people who know him best, now praise his responsibility, trustworthiness, and dependability. One administrator calls him one of the most respected inmates in the prison who will be successful in whatever ruling the district court committed three errors that dictate vacater and remand. First, the court, although recognizing that Castillo's mandatory life sentence was extraordinary in the dictionary sense, refused to consider whether it was extraordinary in the statutory sense because current law would still provide for an effective life term. That was error in light of Brooker. A third, as set forth in our most recent 28-J letter, the district court relied on a recidivism assessment conducted by the Bureau of Prisons that we now know was premised on an error. Now, as to the first one, saying what the court said, is it really I cannot conclude or is it really just saying I have concluded? I mean, I went back and I have to say I found any number of cases in which I used the exact language that the court used, and I know darn well that I didn't mean I couldn't do it. I just meant that that's what I have concluded. I understand, Your Honor. At the threshold, let me first say that under this Court's cases, in particular Thorpe and Brown, which are cited in our briefs, ambiguity on the question whether the district court appreciated the full scope of its discretionary authority is sufficient for remand. But to address Your Honor's question directly, the rest of the district court's analysis, I think, creates at least that level of ambiguity, because the court refuses to analyze Castillo's sentence in terms other than its relationship to the current penalty scheme. But in fairness, I mean, the argument, one of the arguments anyway that was made was he merits compassionate release in part because of this vast seat change in the legislative requirements for this crime, that someone committing this crime today would not be looking at what he was looking at. And it seemed that Judge Wood was just saying, yeah, but somebody committing that crime today would still be looking at a pretty hefty sentence, which would be tantamount to the same thing. So that in the district court, Castillo attacked two aspects of his sentence or identified two aspects of his sentence as relevant to the extraordinary and compelling reasons inquiry. The second was what Your Honor has just described, the relationship between his sentence and the sentence under current law, which we acknowledge are effectively the same. Now, let me tell you what I think, what bothered me, what left me uncertain. The court did say we may, under this section, consider going, not being bound by a mandatory minimum. But we've held, in a little opinion on the case in which I think Judge Lynch was, not that we may consider it, but that it is the case that a district court does not need to be bound by a mandatory sentence. And is it that clear that Judge Wood knew that, you know, it's different from saying I don't think I'm bound, I'm not sure, and saying I'm not bound, and whether that affected the whole sentence, and whether maybe a Jacobson remand to find out what she meant on that might be worthwhile. That's my main... Yes, that's absolutely right, Judge Calabresi. The district court in what the government describes as a recognition of her, quote, potential discretion to go below a statutory mandatory minimum, said that she might have, or may have, discretion to do so. Your Honor is right in Halvon. This Court expressly held that Section 3582 permits a district court to reduce a sentence below a mandatory minimum. But your view, I mean, you believe that Judge Wood, who's been doing this for a long time, and has certainly done a lot of compassionate release motions, didn't understand that she was free under the compassionate release statute to sentence someone below their mandatory minimum? All I can say, Your Honor, is all I can do is identify the language that Judge Wood used, which appears on A169 and pursuant to Section 3582C1A, may have more discretion to depart from a statutorily mandated sentence, dot, dot, dot. And then, as Judge Calabresi points out, it was only subsequently that this Court held in Halvon that she, in fact, had broad authority to do so. That sounds to me rather like I cannot conclude. It's a use of the subjunctive, which can mean a lot of different things. You know, I may have the authority to do this, but I'm not going to do it. That doesn't say, I might have authority, I'm not sure, but I don't need to resolve that question because I'm not going to do it anyway. That just means, you know, I may have this power, but I'm not going to use it. That seems a perfect, you know, and to call that ambiguity strikes me as putting an awful lot of weight on, you know, language that doesn't bear it, ultimately. So what I would say, Judge Lynch, is just as I set forth in the red line in our 28-J letter, the Court said may have more discretion, and a correct statement of the law would have been has broad discretion, definitively. And you think that's enough for us to send it back and say, what did you mean? Well, let me, on that point, I do, I do, Judge Calabresi, and let me, in that respect, just call attention to the relative costs of error here, and what level of ambiguity is sufficient to trigger the extremely modest remedy of a Jacobson remand. Frank Smith Castillo is serving a mandatory life sentence, of which he's done 21 years. He's demonstrated extraordinary rehabilitation, and if we are wrong about what Judge Wood meant, Judge Wood can easily tell us so. It's not going to require a resentencing proceeding. Indeed, it won't even require that Mr. Castillo be brought to New York. But if we are right, then the cost of error is dramatic, because Mr. Castillo has been deprived of the full judicial review of his mandatory life sentence to which Congress entitled. And can I ask, Mr. Huffey, about the last point that you hadn't gotten to, the assessment tool? Yes, sir. There, too, I suppose we're going to hear from the government that Judge Wood gave her own analysis, sort of commonsensical analysis, of this is a guy who had such a history of recidivism that it's hard not to think that he continues to have some tendencies in that direction. Okay. But she does refer to this assessment, that there was a sort of objective in several sets of scare quotes, assessment by the Bureau of Prisons that indicated that he was a high recidivism risk. Now, do we actually know anything about what tool was used to do that, and whether he's been reassessed or anything of that sort, or are we just sort of guessing that based on the timing, it was probably this earlier tool? So let me take the Court's questions in order. I think the response to the first question is Judge Wood relied on Castillo's record at the time she sentenced him in 2005 to conclude that he was a recidivist. But the assessment tool is ostensibly, anyway, supposed to assess risk as of the time that the message? Precisely. And we don't know actually, probably. I mean, I gather that the government and private purveyors of such tools treat these all as proprietary and don't let anybody know what's in them. So let me, again, just... In other words, what I'm trying to get at is if we knew actually what the tool was and you could sort of run the numbers and see if it makes a difference once they've changed to the new one, that would be significant to know. I understand. The short answer is no. The answers to those questions aren't in the record before this Court, which is another reason why a remand would be a prudent course of action. It would allow the district court in the first instance to, A, confirm that the assessment instrument used was Pattern 1.2. But in truth, based on the timing of the assessment, which was in July 2020, that appears to be the only tool that was in use at the time. But number one, what the inputs were. Number two, how those inputs would or would not come out differently under the current assessment. But none of that material is in the record. But you could make, I mean, there's nothing that bars you from making another, your client, from making another compassionate release motion based on that argument, right? That's true. But at the same time, this Court has appellate jurisdiction to decide this appeal. And I think it would be... Right. We just don't have, we just don't have what we would need to know to determine the limits of the tool, right? And so what I would say in that regard is just as Judge Calabresi has identified some police potential ambiguity in light of this Court's intervening decision in Halvon, and just as there is a real risk that this assessment was premised on both sort of factually... Because in fact, when we do a Jacobson remand, really realistically, we are asking for clarity, but we're also inevitably psychologically suggesting to a district court, think about it. I mean, isn't that... Which makes it more than as little as you described it, and yet has maybe more reason for being done, even if the ambiguity is slight. Am I wrong in saying that? You are not, Judge Calabresi. And let me also say, and although this isn't in the record before this Court, but I've advised the government of this a few weeks ago, that at a remand, of course, the Court would be obliged to assess Mr. Castillo's circumstances as he stood before the Court. And it is the case that several months ago, he suffered a heart attack and was hospitalized for that. And so that would be another piece of the puzzle that the Court could consider. I must say that I always find very difficult the argument that extraordinary circumstances exist because of COVID, and therefore a sentence should be reduced to 21 years, that is four years beyond what is now. I hope that by then COVID won't really... That's just the only part of the argument that I always find difficult. I don't understand that. No, I take the Court's point. And when this motion was made in December 2020, the COVID landscape was different from what it is today. That said, although COVID prevalence has declined, Mr. Castillo's health has declined too. And so I think I would just say this. Given the potential ambiguity in light of Halvon, and given, and I really want to make this point as strongly as possible, the unquestionable and constitutionally suspect assessment instrument that overpredicted the risk of recidivism for black and Hispanic inmates such as Castillo, a remand here is prudent and consistent with the scope of review that Congress intended. All right. Well, you've reserved two minutes for rebuttal, Mr. Habib. We'll now hear from Mr. Harper. You may proceed, Mr. Harper. May it please the Court. My name is Brandon Harper. I'm an assistant United States attorney for the Southern District of New York, and I represent the United States in this appeal. There are two independent bases on which this Court can and should affirm the District Court. And I'll begin by talking about the Section 3553A factors, because the Court was just discussing the issue of recidivism. As you pointed out, Judge Sullivan, the Court below determined that the 3553A factors weighed against release in part based on recidivism, but that recidivism finding was an independent determination that Judge Sullivan relied on the entirety of the record, and she did not rely exclusively or primarily on any assessment of the BOP. In addition, she considered How do we know that? That is, it's certainly she could have relied just on his record. I think there's no doubt about that. But there was also the other. So, again, aren't you asking us to put ourselves into the minds of a district judge and decide which she was focusing on? As I said in another case, I found it very difficult to get into the minds of district judges or even Court of Appeals judges. I appreciate the question, Judge Calabresi. I think looking at the context of the way Judge Wood assessed the recidivism makes clear that she considered first, the first thing she talked about was the fact that Castillo reoffended time and time again shortly after having been released. That was the case in this case. She then talked about her own experience, having been the judge who sentenced Castillo in the first instance, the fact that his record at the time indicated to her that he was a risk of recidivism. And her citation to the BOP report was the last note that she made about recidivism. She didn't describe the assessment in any detail. As you note, Judge Lynch, we don't have in the record any detail about that. But it is not only the last thing, but it's the only thing here that would purport to be a measure of his current risk. Right? And this is, what, 15 years plus after his last time and after 15 years of imprisonment. I mean, in my experience, people change over 15 years. They change in prison over 15 years, maybe for the better and maybe for the worse. I'm not saying, you know, people inevitably get rehabilitated as they age in prison. Perhaps quite the contrary for a lot of people. But he's not the same person now that he was when he was originally sentenced. And here's a tool that apparently purports to say that he is. And now the government has indicated, frankly and appropriately, that they no longer have any information on the extent to which that was apparently measured. Now, I mean, I'll give you that when you take this whole opinion in toto, it's hard to think that that one tool is what made the difference. But on the recidivism risk front, it does seem to be of some significance. Your Honor, certainly the assessment that was used is something that, based on the report, we don't have anything in the record to suggest that there have been reassessments of individuals like Castillo or that that tool has been used. If you've got a tool that has been used in the past that is admittedly overstating the recidivism risk for a certain class of people, including this man, then why wouldn't it make sense to give him the new and putatively better assessment and see if it made a radical difference? It may make no difference at all. And it may make no difference at all to Judge Wood. Frankly, I would, if I were the judge, probably put more weight on what we could all see about the person, both in his past and in his more immediate past, than I would in some putative algorithm. But we don't know that Judge Wood would do that. Your Honor, we don't know. But what we do know is that to the extent that Castillo wants to introduce this new information, which was not before Judge Wood and is not currently in the record, he may do that. He has the opportunity to make a new application. That's exactly right. Yes, but realistically, isn't it much more efficient if this is something that we think he would do for us to send it back with a Jacobson remand now rather than have somebody in prison come back, put in a new application, get new defense lawyers? I mean, just in terms of what, if that is something that we are concerned about, ain't it much faster for us just to send a Jacobson remand rather than going through a whole new application? I don't mean that often that new application isn't the right thing, but I'm just wondering in the context of this case. Your Honor, I'm not sure whether that would be more efficient. What I do know is that this Court has said that in cases such as these, compassionate release cases, where it's clear on the record that the Court considered the 3553A factors, as Judge Wood did, including other factors in addition to rehabilitation. The decision was not confined purely to rehabilitation, and that was not necessarily dispositive, that the Court can, and in the government's view should, affirm, and to the extent that Castillo wants to bring this application, he may. Judge Wood has great familiarity with Mr. Castillo. She tried one of his trials. She sentenced him in the first instance. She wouldn't be starting from scratch. But it's the government's view that there's no need to remand here because the Court can affirm on the 3553A factors and also separately on the question of extraordinary and compelling reasons. Judge Wood properly exercised her discretion, and I'll move on to the extraordinary and compelling reasons point, because it's very clear that in denying Castillo's motion, she based the decision on a very case-specific assessment of the purported extraordinary and compelling circumstances. Judge Wood's denial of this was that the Court had the discretion. She used the term may depart below the statutory requirement, and decided that in this circumstance, she declined to do so. She understood her discretion to, quote, consider the full slate of extraordinary and compelling reasons that an imperson person might bring in a motion for compassionate release, citing But then properly reasoned that Castillo's lengthy sentence was driven not by the stacking laws, but by the plain language of 924C. The focus that Castillo brings on... But it is still stacking. This may just be a terminological problem. But what changed was not the stacking of three mandatory sentences, which still happens. It's a reduction in the enhanced maximum that was applied at the time that he was sentenced originally. And frankly, isn't it still a pretty extraordinary sentence, frankly? I mean, he did three robberies. That's really bad. They're armed robberies, unbanked robberies. No question that's very serious. But it becomes still today, under the current law, for anyone who's old enough to do three bank It's a life sentence automatic. It's 30 plus 30 plus 30. They're still stacked. They're just not 30 plus life plus life to make a ridiculous sentence that in its own terms is meaningless. But instead, it's still a lifetime sentence. It's 90 years of sentencing at a minimum. It is. It's a lengthy sentence. And to use the dictionary term, it is an extraordinarily lengthy sentence. But Congress decided that for a person convicted of the offenses for which Castillo was convicted, if sentenced today, 90 years would be the appropriate sentence. And that's something that Judge Wood considered. She did consider the fact that it would not require her to sentence. What does it mean to say Congress decided that and then to say that I may, but she doesn't say that I can ignore it. I mean, she then says Congress did it, so I should follow it. But how does that fit with our statement? But you don't need to follow it. That's ultimately was the first question that I asked the other side. I'm puzzled about the statement. This is what Congress said, therefore, and are saying, but you don't need to follow that when you're talking about compassionate release. Well, that's right, Judge Calabresi. I think when looking at what Judge Wood said, she essentially said Congress has decided that this 90 year term is appropriate. And I also understand that I may decide something different. I may sentence the defendant to less than 90 years, but I decline to do so in consideration in part of what Congress believes is appropriate and also in consideration of all of the other facts Because it is appropriate, nevertheless, right? I mean, you would say, and I would agree with you, I think that though the court is not required or is not forbidden to give a sentence below a currently existing mandatory minimum, the court may consider, is supposed to consider the seriousness of the offense and may consider in assessing that seriousness the way that Congress thinks about it. It doesn't mean that she couldn't say, well, in this case that should go by the boards, but it's certainly an appropriate consideration, right? It absolutely is. And I think when looking at the entirety of Judge Wood's opinion, what's clear is that she understood after Brooker that she had wide discretion, she considered myriad factors, and exercised the discretion of not reducing the sentence. And that was not an abuse of discretion. And so unless the court has additional questions, we rest on our brief and would respectfully request that the court affirm Judge Wood on the two independent bases. Thank you. All right. Thank you. Mr. Harper, we'll now hear from Mr. Habib for two minutes of rebuttal. Thank you. Judge Lynch, as a factual matter, there have been two amendments to the pattern assessment. Pattern 1.2 was used until about January 2021, at which point it was replaced by Pattern 1.2R. There's now Pattern 1.3, which was promulgated and I believe intended to be applied in the beginning of May. So beyond that, there's no information in the record as to whether Mr. Castillo has been reassessed under any of those. There's nothing in the record as to whether he's ever been reassessed, nor is there anything in the record or even outside the record that's publicly available, most likely, that says what the exact — there's no ability for us or you or anyone outside of the government to run the numbers under any of these new tools and see how they come out. Correct. Second, Judge, let me The impact of the assessment is that it purports to state who Castillo is today. And it purports to state that he remains a high risk of recidivism today. And that assessment affects both prongs of the statutory inquiry. We know it mattered to Judge Wood's assessment of his history and characteristics under 3553A1 and the need for the sentence to protect the public under 3553A2C. But I also want to suggest that it affected Judge Wood's analysis of the extraordinary and compelling prong for the following reason. One of the grounds for release that Castillo asserted was his rehabilitation. And if Judge Wood, in assessing his rehabilitation, believed that he remained a risk of recidivism today, she might well reasonably conclude that his rehabilitation had been less than complete or assign that variable less weight. Finally, I want to say that — and I haven't heard the government disagree — that the patent 1.2 assessment was not only error-prone, but it evaluated risk in a racially disparate manner. And the Supreme Court has told us again and again, most recently perhaps in Peña-Rodriguez, that the risk of racial bias affecting outcomes in the criminal justice system is especially pernicious and is cause for special curative rules that might not otherwise apply. And so if this Court is considering a remand, then that risk, I think, ought to dictate a remand upon a lesser showing of ambiguity than might otherwise be the case.